IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTIAN STRICKLAND, | ) | CASE NO. 1:10 CV 2944 |
| | ) | |
| Petitioner, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| MICHELE MILLER | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

## Introduction

Before me by referral[1] is the petition of Christian Strickland[2] for a writ of habeas corpus under 28 U.S.C. § 2254.[3] Strickland is currently incarcerated at Belmont Correctional Institution in St. Clairsville, Ohio, where he is serving a term of eight years imprisonment imposed after conviction on two counts of rape, two counts of attempted rape, attempted felonious assault, and kidnapping with a sexual motivation specification at a bench trial in the Cuyahoga County Court of Common Pleas.[4]

---

[1] ECF # 5.

[2] Strickland is represented by attorney Dean Boland (ECF # 1 at 16). Boland also represented Strickland during trial.

[3] ECF # 1.

[4] *Id.* at 2.

In his petition, Strickland raises two grounds for relief.[5] The State, in its return of the writ, argues that the petition should be denied in part and dismissed in part.[6] Strickland filed a traverse.[7] For the reasons the follow, I recommend finding that the petition should be dismissed in part and denied in part, or alternatively denied in full.

## Statements of Facts and of the Case

### A.     The underlying facts and the state trial

The facts that follow come from the decision of the Ohio Court of Appeals.[8] Strickland met B.F. in February, 2007, through an Internet dating website, and the couple quickly became intimate.[9] Strickland and B.F. often fought over Strickland's alleged infidelity, but they became engaged in June, 2007.[10]

B.F. broke that engagement a month later, but Strickland and B.F. reconciled.[11] After obtaining new evidence of infidelity, however, B.F. again ended the relationship.[12] On

---

[5] *Id*. at 6, 8.

[6] ECF # 8.

[7] ECF # 11.

[8] Facts found by the state appellate court on its review of the record are presumed correct by the federal habeas court. 28 U.S.C. § 2254(e)(1); *Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001).

[9] ECF # 8, Ex. 1 (state court record) at 123.

[10] *Id.*

[11] *Id*.

[12] *Id*.

July 29, 2007, the couple reunited once again and engaged in sexual intercourse twice that night at B.F.'s home.[13]

The next evening Strickland and B.F. had an argument over Strickland's infidelities on her patio, and during this episode Strickland grabbed B.F.'s face as if to kiss her and bit her lip.[14] He then flipped over her chair and choked her in the grass with both hands, threatening to kill her and himself.[15] He released her and apologized as he assisted her to the kitchen.[16] Inside, B.F. discovered that Strickland had taken her car keys and cell phone, locked all of the windows in the house, and blocked access to the patio door with two chairs.[17]

B.F. then convinced Strickland to try to go to sleep.[18] When in the bedroom, Strickland told her, "we're going to be together one last time" and "you can call it rape but you're going to enjoy it."[19] Strickland bit her on the thigh after he was unable to perform and B.F. had refused to perform oral sex on him.[20] B.F. then fell asleep but awoke unable to

---

[13] *Id*. at 124.

[14] *Id.*

[15] *Id*.

[16] *Id.*

[17] *Id*.

[18] *Id*.

[19] *Id*. at 124-25.

[20] *Id*. at 125.

breathe because Strickland was on top of her.[21] Later that night Strickland forced B.F. to have vaginal intercourse with him, and subsequently forcibly penetrated her with his fingers.[22]

In the morning, B.F. tried to convince Strickland to call the police, and Strickland allowed her to go outside to smoke.[23] When Strickland turned away, B.F. fled the yard as Strickland called to her, "fine, fine. I'll call the police. I'll call the police."[24] She heard him talking to someone, ran to the phone, screamed her address, and then fled to the driveway as the police approached.[25]

In August 2007, Strickland was charged with two counts of rape, two counts of attempted rape, one count of felonious assault, one count of attempted felonious assault, and kidnapping with a sexual motivation specification.[26]

---

[21] *Id*. at 125.

[22] *Id*.

[23] *Id*.

[24] *Id*.

[25] *Id*.

[26] *Id*. at 1-7.

After Strickland executed a written waiver of his right to a jury trial[27] and further orally waived that right before the trial judge,[28] the court accepted the waiver, finding that Strickland had waived the right "knowingly, intelligently, and voluntarily."[29]

A bench trial followed at which Strickland testified in his own defense.[30] He admitted his infidelity, claimed that the argument between them began when she accused him of cheating, and asserted that the sexual intercourse and digital penetration had been consensual.[31] Also, Strickland claimed he took B.F.'s car keys because she had been drinking.[32]

He denied raping, kidnapping, and assaulting B.F., stating that the only physical altercation that occurred was wrestling in the backyard for his cell phone, her smacking him in the kitchen, and her trying to hit him in the garage.[33] He said he called police the next morning because he had an "eerie feeling" about B.F.'s bizarre behavior.[34]

---

[27] *Id*. at 44.

[28] *Id*. at 45.

[29] *Id*.

[30] *Id*. at 125.

[31] *Id*. at 126.

[32] *Id.*

[33] *Id.*

[34] *Id.*

Following all the testimony, the court found Strickland guilty of two counts of rape, two counts of attempted rape, attempted felonious assault, and kidnapping with a sexual motivation specification.[35] The trial court found him not guilty of felonious assault.[36] The court sentenced Strickland to concurrently serve four years in prison for each rape and attempted rape count, one year in prison for attempted felonious assault, and three years for kidnapping for a total term of eight years.[37]

**B.     Direct Appeal**

*1.     Ohio Court of Appeals*

Strickland, represented by new counsel,[38] filed a timely notice of appeal with the Ohio appellate court,[39] presenting three assignments of error:[40]

> Assignment of Error 1: The trial court denied Strickland his constitutional rights to a trial by jury by failing to receive a waiver of trial by jury in accordance with R.C. 2945.05.[41]

---

[35] *Id*. at 48.

[36] *Id.* at 49.

[37] *Id.*

[38] Strickland was represented at trial by Michael O'Shea and Dean Boland (*see*, *id.* at 47) and on appeal by James L. Burdon (*id.* at 52).

[39] Strickland was sentenced on July 31, 2008 (*id.* at 49) and filed his notice of appeal on August 21, 2008 (*id.* at 52-3). Ohio App. Rule 4(A) provides that, to be timely, an appeal must be filed within 30 days of a judgment's entry. Applying that law to the facts as stated, I recommend finding that Strickland timely filed the notice of appeal.

[40] *Id*. at 100.

[41] *Id*.

-6-

Assignment of Error 2: The verdict is against the manifest weight of the evidence.[42]

Assignment of Error 3: The court denied Strickland his Constitutional right to a fair trial by quashing subpoenas issued for computer records of B.F.[43]

The State filed a brief in opposition,[44] and the Ohio appeals court then affirmed the decisions of the trial court, overruling all of Strickland's assignments of error.[45]

## 2.     *The Supreme Court of Ohio*

Strickland, now represented by the Ohio Public Defender, filed a timely notice of appeal with the Supreme Court of Ohio.[46] In his brief in support of jurisdiction, he raised two propositions of law:[47]

Proposition of Law 1: The trial court denied appellant his constitutional right to a trial by jury by failing to receive a proper waiver of a jury trial.[48]

--------

[42] *Id*.

[43] *Id*.

[44] *Id*. at 76-95.

[45] *Id*. at 122-37.

[46] *Id*. at 138-40. The Ohio appeals court decision was journalized on August 17, 2009 (*id*. at 121) and the notice of appeal to the Supreme Court of Ohio was filed on October 1, 2009 (*id*. at 138). To be timely under Ohio Supreme Court Rule of Practice 2.2(A)(1)(a), a notice of appeal must be filed within 45 days of the entry of the appellate judgment for which review is sought. *See also*, *Applegarth v. Warden*, 377 F. App'x 448, 450 (6th Cir. 2010). Applying that standard to the facts as stated above, I recommend concluding that Strickland's notice of appeal was timely filed.

[47] *Id*. at 142.

[48] *Id*.

Proposition of Law 2: A trial court violates a defendant's right to a fair trial and due process of law in the Fifth and Fourteenth Amendments to the United States Constitution by quashing subpoenas issued for the computer records of the complaining witness.[49]

The State filed a responsive memorandum.[50] On December 30, 2009, the Supreme Court of Ohio denied leave to appeal, dismissing the matter as not involving any substantial constitutional question.[51] The record does not show that Strickland sought a writ of certiorari from the United States Supreme Court.

**C.     Petition for writ of habeas corpus**

On December 29, 2010, Strickland, represented by counsel, timely filed a federal petition for habeas relief.[52] As noted, he raised two grounds for relief:

1.     Petitioner's right to a fair trial and due process were violated when the petitioner was denied access to the complaining witnesses (*sic*) computer data by the trial judge who quashed subpoenas issued for said data in violation of the VI and XIV Amendments of the Constitution of the United States of America.[53]

2.     Petitioner was denied his constitutional right to a trial by jury, in that, he failed to receive (*sic*) a proper waiver of trial by jury in accordance with R.C. 2945.05 in violation of the VI Amendment of the Constitution of the United States of America.[54]

---

[49] *Id*.

[50] *Id*. at 154-64.

[51] *Id*. at 165.

[52] ECF # 1.

[53] *Id*. at 6.

[54] *Id.* at 8.

The State's return of the writ essentially argues that the first ground for relief should be denied on the merits because the state appellate court decision on this issue was not an unreasonable application of clearly established federal law, and the second ground should be dismissed as stating a non-cognizable state-law claim for relief.[55] Strickland, as noted, filed a traverse disputing the State's assertions.[56]

## Analysis

### A.   Preliminary observations

Before addressing the claims for relief, I make the following preliminary observations.

1.   There is no dispute that Strickland is currently in state custody as a result of his conviction and sentence by an Ohio court, and was so incarcerated at the time he filed this petition for federal habeas relief. Thus, I recommend finding that Strickland meets the "in custody" requirement of the federal statute vesting this Court with jurisdiction over the petition.[57]

2.   There is also no dispute on the facts related above that this petition has been timely filed under the applicable statutory standard.[58]

3.   In addition, Strickland asserts,[59] and my own review of the docket in this District confirms, that this petition is not a second or successive petition for federal habeas relief as to this conviction and sentence.[60]

---

[55] ECF # 8.

[56] ECF # 11.

[57] 28 U.S.C. § 2254(a); *Ward v. Knoblock*, 738 F.2d 134, 138 (6th Cir. 1984).

[58] 28 U.S.C. § 2254(d)(1); *Bronaugh v. Ohio*, 235 F.3d 280, 283-84 (6th Cir. 2000).

[59] ECF # 1 at 13.

[60] 28 U.S.C. § 254(b); *In re Bowen*, 436 F.3d 699, 704 (6th Cir. 2006).

4.     Moreover, Strickland contends,[61] and my own review establishes, that both claims here have been totally exhausted in Ohio courts by having been fully and fairly presented through one full round of Ohio's established appellate review procedure as federal constitutional claims.[62]

5.     Also, the State has not asserted, nor is there any indication from the record, that federal review of these claims would be precluded by procedural default.[63]

6.     Finally, I note that Strickland has not requested an evidentiary hearing[64] nor the appointment of counsel.[65]

## B.     Standards of review

### 1.     *Non-cognizable claims*

The federal habeas statute, by its own terms, restricts the writ to state prisoners who are in custody in violation of federal law.[66] Accordingly, it is well-settled that, to the extent a petitioner claims that his custody is a violation of state law, the petitioner has failed to state a claim upon which federal habeas relief may be granted.[67] In such circumstances, a claim

---

[61] ECF # 1 at 13.

[62] 28 U.S.C. § 2254(b); *Rhines v. Weber*, 544 U.S. 269, 274 (2005); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).

[63] *See*, 28 U.S.C. § 2254(d); *Pudelski v. Wilson*, 576 F.3d 595, 605 (6th Cir. 2009).

[64] 28 U.S.C. § 2254(e).

[65] 28 U.S.C. § 2254(h); Rule 8(c), Rules Governing 2254 Cases.

[66] 28 U.S.C. § 2254(a).

[67] *Lewis v. Jeffers,* 497 U.S. 764, 780 (1990).

for federal habeas relief based solely on the ground of purported violation of state law is properly dismissed by the federal habeas court as non-cognizable.[68]

But a claimed error of state law may nevertheless serve as the basis for federal habeas relief if such error resulted in the petitioner being denied "fundamental fairness" at trial.[69] The Supreme Court has made clear that it defines "very narrowly" the category of infractions that violate the "fundamental fairness" of a trial.[70] Specifically, such violations are restricted to offenses against "'some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'"[71]

The petitioner bears the burden of showing that a principle of fundamental fairness was violated.[72] In so doing, the federal habeas court must follow the rulings of the state's highest court with respect to state law[73] and may not second-guess a state court's interpretation of its own procedural rules.[74] Further, while, in general, distinct constitutional claims of trial error may not be cumulated to grant habeas relief,[75] the Sixth Circuit has

---

[68] *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007).

[69] *Estelle*, 502 U.S. at 67-68.

[70] *Bey*, 500 F.3d at 522, quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990).

[71] *Id.* at 521, quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996).

[72] *Id.*

[73] *Wainwright v. Goode*, 464 U.S. 78, 84 (1983).

[74] *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988).

[75] *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006).

recognized that "'[e]rrors that might not be so prejudicial as to amount to a deprivation of due process when considered alone, may cumulatively produce a trial setting that is fundamentally unfair.'"[76]

## 2.    *AEDPA review*

Where a state court adjudicated the merits of a claim now asserted in a federal habeas petition, the controlling federal statute is plain that the federal habeas court may use that claim as a basis for granting the writ only if the state decision was either contrary to clearly established federal law as determined by the United States Supreme Court or was an unreasonable application of that law.[77]

In applying that statute, a federal habeas court is guided by the well-known teachings of *Williams v. Taylor*.[78]  As stated by the United States Supreme Court in *Williams,* a decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts."[79] *Williams* further holds that a state court decision is an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal

---

[76] *Gillard v. Mitchell*, 445 F.3d 883, 898 (6th Cir. 2006), quoting *Walker v. Engle*, 703 F.2d 959, 963 (6th Cir. 1983).

[77] 28 U.S.C. § 2254(d).

[78] *Williams v. Taylor*, 529 U.S. 362 (2000).

[79] *Id.* at 412.  *Accord*, *Broom v. Mitchell*, 441 F.3d 392, 398 (6th Cir. 2006).

principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."[80]

Moreover, a federal court may not find that a state court unreasonably applied clearly established federal law simply because the habeas court "concludes on its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly."[81]  Rather, the state court holding may be disturbed only upon showing that it was "objectively unreasonable."[82]

In addition, a state court may be found to have unreasonably applied clearly established federal law if it unreasonably extends or unreasonably fails to extend a clearly established federal legal principle to a new context.[83]

Finally, where a state court does not address the merits of a federal claim properly presented to it, "the deference due [a state court decision by the federal habeas court] under the AEDPA does not apply."[84]  Then, the federal court is to review the claim *de novo*.[85]

---

[80] *Williams*, 529 U.S. at 413; *Broom*, 441 F.3d at 398.

[81] *Williams*, 529 U.S. at 411.

[82] *Id*. at 409.

[83] *Id.* at 405-07.  *Accord*, *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

[84] *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003).

[85] *Id.*

### 3. *Fairly presented federal constitutional claims not addressed by state courts*

The standard of review outlined by 28 U.S.C. § 2254(d) applies by its own terms to claims for habeas relief that were "adjudicated on the merits in State court proceedings."[86] When a federal habeas corpus claim was fairly presented to but not adjudicated on the merits by a state court, the federal habeas court must evaluate that claim under the pre-AEDPA standard, reviewing *de novo* questions of law and mixed questions of fact and law.[87] Or, in cases where the state court did not squarely address the petitioner's federal constitutional claim, but its analysis nevertheless bears "some similarity" to the analysis required by clearly established federal law, federal courts employ a modified version of the deference of AEDPA deference to state court decisions whereby the federal court carefully reviews the record and the applicable law, and "may reverse [the state court judgment] only if [the federal court] conclude[s] that the state court's decision is contrary to or an unreasonable application of clearly established federal law."[88]

### C. Application of standards

### 1. *Ground one should be denied after de novo review because the state appellate court decision on this matter is not contrary to clearly established federal law.*

As noted, in ground one Strickland contends that his rights to a fair trial and due process were violated when the trial court quashed subpoenas that sought information

---

[86] 28 U.S.C. § 2254(d); *Maples*, 340 F.3d at 436.

[87] *Maples*, 340 F.3d at 436.

[88] *Filiaggi v. Bagley*, 445 F.3d 851, 854 (6th Cir. 2006) (citation omitted).

-14-

from the victim's home and work computers.[89] Essentially, Strickland maintains that these records would have gone to the victim's credibility by showing her "jealous venom" in communications she purportedly made to other women while posing as Strickland on the Internet.[90]

As mentioned above, Strickland fairly presented this ground to Ohio courts as a federal constitutional claim. While the stated assignment of error in this regard is not extensively developed in Strickland's brief (six paragraphs), and that discussion does not explicitly argue the claim as a federal issue, the brief does rely on a single Ohio case[91] that itself rests on some federal constitutional analysis. Reliance on a state case employing federal constitutional analysis is well-recognized as being sufficient to fairly present a federal

---

[89] ECF # 1 at 12.

[90] ECF # 11 at 3-4.

[91] *State v. Boggs*, 1991 WL 13735 (Ohio Ct. App. 1991), reversed, *State v. Boggs*, 63 Ohio St. 3d 418, 588 N.E.2d 813 (1992). The appeals court here held, on the basis of similar holdings by courts in other states, that Ohio's rape shield law (Ohio Rev. Code § 2907.02(D)), which precludes evidence of a victim's prior sexual conduct from being offered at trial, did not preclude offering evidence of prior false accusations of rape by the victim, which evidence goes to credibility. The court reasoned that such evidence of credibility is crucial to affording the defendant a meaningful Sixth Amendment right to cross-examination. *Boggs*, 1991 WL 13735, at **7-8. The Ohio Supreme Court reversed and clarified the rule to be that a rape victim may be cross-examined about prior false accusations of rape only where no sexual activity was involved, and "under no circumstances" would the defense be permitted to introduce extrinsic evidence to impeach credibility since the rights to confront witnesses and to defend "are not absolute and may bow to accommodate other legitimate interests in the criminal process." *Boggs*, 63 Ohio St. 3d at 422, 588 N.E.2d at 817 (citations omitted).

-15-

constitutional claim to the state court.[92] Thus, because the State also appears to recognize that this issue was fairly presented as a federal claim though not decided on that basis,[93] I recommend finding that this ground for relief was fairly presented to the Ohio courts.

But, even though this Court should recognize that this claim as fairly presented to the Ohio appeals court, it should also recognize that the state court here adjudicated the claim solely as a matter of abuse of discretion under Ohio law, with no discussion of any federal constitutional issue and in terms that do not bear any similarity to the clearly established federal Due Process law.[94] Accordingly, as noted above, this Court should review the federal constitutional claim *de novo*.

I note, as does the State, that the trial court here quashed the subpoenas after a hearing at which the parties stipulated that the defense would have access to the victim's work and home computers, her cell phone records, records from the Internet dating service, and the various Internet service providers.[95] Subject only to emails from the victim's work computer being edited for matters of privilege (B.F. is an attorney), the court ordered all emails referencing Strickland to be provided to him for his defense.[96]

---

[92] *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).

[93] ECF # 8 at 17. "[T]he state court of appeals did not specifically address ... [Strickland's] federal constitutional claim.... [but] the court did address the underlying basis for the asserted constitutional violation...."

[94] *See*, ECF # 8, Attachment at 133-34.

[95] ECF # 8 at 18 (quoting from the opinion of the Ohio appeals court).

[96] *Id*. at 18-19 (quoting from the state court opinion).

Thus, as the State clearly asserts, the quashing of the subpoena did no more than preclude Strickland from obtaining information beyond the scope of what was relevant to his defense.[97] Indeed, the state trial court order quashing the subpoena determined that all "discoverable" documents and phone records were to be produced to the defendant subject to "certain redactions of irrelevant and/or privileged material."[98]

Strickland, for his part, does not mention these specific components of the trial court's order. Instead, in mostly vague and general terms, he merely suggests that his subpoena request "to have [the victim's] home and work computers analyzed by a professional for relevant information," was somehow rejected by the trial court's order which withheld "relevant, credible and material evidence" from Strickland in violation of his Due Process and Fair Trial rights.[99]

It is well-settled that there is no general constitutional right to discovery in criminal cases.[100] But, the Constitution does guarantee criminal defendants "'a meaningful opportunity to present a complete defense.'"[101] In that regard, "presenting relevant evidence is integral

---

[97] *Id*. at 18.

[98] ECF # 8, Attachment at 43.

[99] ECF # 11 at 5-6.

[100] *Weatherford v.Bursey*, 429 U.S. 545, 559 (1977).

[101] *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)).

to that right."[102] This right is not absolute,  and "'[s]tates have broad authority to promulgate rules that exclude evidence so long as they are not arbitrary or disproportionate to purposes they are designed to serve.'"[103] The Supreme Court has found the exclusion of evidence to be unconstitutionally arbitrary or disproportionate only when it has "infringed upon a weighty interest of the accused."[104]

To the extent a petitioner's argument about the admissibility of evidence is purely a question of state law, the petitioner has failed to state claim upon which the writ can issue.[105] As previously stated, an issue concerning the admissibility of evidence may rise to a level of constitutional magnitude, however, under the very limited circumstances where the error was so egregious that the petitioner was denied a fundamentally fair trial.[106] Specifically, to determine if the admission or exclusion of evidence has denied a defendant the fundamental right to due process, the federal habeas court must consider the extent to which the evidence in question "is material in the sense of a crucial, critical and highly significant factor."[107]

Here, I recommend finding that the decision of the trial court did not in any demonstrable way deny Strickland a fundamentally fair trial. First, as the Ohio Appeals court

---

[102] *Baze v. Parker*, 371 F.3d 310, 323 (6th Cir. 2004) (citing *Taylor v. Illinois*, 484 U.S. 400, 408-09 (1988)).

[103] *Id.* (quoting *United States v. Scheffer*, 523 U.S. 303, 308 (1988)).

[104] *Scheffer*, 523 U.S. at 308)).

[105] *Lewis*, 497 U.S. at 780.

[106] *Estelle*, 502 U.S. 62 at 67-68; *Lewis*, 497 U.S. at 780.

[107] *Ege v. Yukins*, 485 F.3d 364, 375 (6th Cir. 2007) (internal quotation omitted).

noted, the trial court permitted Strickland to have access to all the victim's home and work computers, as well as her cell phone records and records from the dating service, subject only to redactions to protect any attorney-client privilege.[108] As such, to the degree Strickland's petition now seeks to create an impression that he was denied any discovery that could produce evidence going to the victim's credibility or to portray her as angry and motivated to lie, the record establishes that such impression is incorrect.[109]

Moreover, a discussed above, Strickland's habeas petition does not attempt to clearly articulate precisely what discovery was not allowed after the trial court's ruling and why, specifically, any such denied requests were so "crucial, critical and highly significant" to his defense such that their absence denied him his fundamental right to due process. I note, as did the state appeals court, that Strickland did argue at trial that the victim was not credible, presenting evidence that she was "'a woman obsessed with jealousy and unrestrained by her oath [as an attorney] to tell the truth.'"[110]

Inasmuch as Strickland's evidence at trial is exactly what Strickland now contends was denied him by the trial court's ruling, the best that can be surmised from the present petition is that there was some possible additional evidence on that subject that Strickland

---

[108] ECF # 8 at 18-19 (quoting the appeals court opinion).

[109] *Id.* Strickland sought to create the same impression in the state appeal, but the Ohio appeals court pointedly contrasted Strickland's claim that he was denied the opportunity to examine the victim's phone and email records with the reality of what the trial court actually allowed.

[110] ECF # 8, Attachment at 131.

was precluded from discovering. If so, it is clear that merely cumulative evidence does not rise to the level of being crucial or critical factors such as would implicate constitutional concerns for a fair trial.[111]

Accordingly, for the above-stated reasons, based on an examination of the record and the applicable law, and after *de novo* review, I recommend that ground one of Strickland's claim for federal habeas relief be denied on the basis that the state court's decision on this issue is not contrary to clearly established federal law.

**2.    *Ground two should be dismissed as a non-cognizable state law claim.***

In his second ground for relief, Strickland contends that he did not execute a valid waiver of his right to a trial by jury according to the terms of Ohio law, and that this invalid waiver constitutes a violation of Article VI of the U.S. Constitution.[112]

The State, in response, argues that this claim was not fairly presented to the Ohio courts as a federal constitutional claim and was adjudicated solely as a matter of state law, thus making the resulting decision non-reviewable by a federal habeas court.[113]

Strickland's brief on appeal starts with a statement of the purported principle that the Sixth Amendment right to a jury trial may be waived if such waiver is "knowing, voluntary and in writing" and that a valid waiver must be executed in conformity with Ohio Revised

---

[111] *Davis v. Burt*, 100 F. App'x 340, 350 (6th Cir. 2004); *Fomby v. Jackson*, 2007 WL 925909, at *4 (E.D. Mich. March 26, 2007) (citations omitted).

[112] ECF # 1 at 12.

[113] ECF # 8 at 12-14.

Code § 2945.05, which states, *inter alia*, that the waiver be made in open court.[114] "In this case," Strickland argued, underlining the phrase for emphasis, "there is no evidence from the transcript that the waiver was signed by defendant below and strict compliance with the statute authorizing jury waivers is required."[115] Strickland then continued that this Ohio statutory requirement has been uniformly held to require that if the waiver form was signed outside of court that the defendant specifically acknowledge his signature on the form in open court.[116] Although Strickland conceded that "the court files in this case include a jury waiver with a signature thereon, there is no evidence that [Strickland] personally signed the form."[117] Because there was no evidence on the record of Strickland acknowledging his signature on the waiver form, Strickland urged the appeals court to find that the waiver was ineffective as a matter of Ohio law and thus the trial court was without jurisdiction, citing the Ohio Supreme Court case of *State v. Pless*.[118]

Analyzing the claim solely as a question of Ohio law, the Ohio appeals court concluded that *Pless*, and thus Ohio law, required only that the waiver, not the signature, be affirmed in open court, and that the signed waiver be part of the trial record.[119] After

---

[114] ECF # 8 at 104 (quoting Ohio Rev. Code § 2945.05).

[115] *Id.* (citing *State v. Pless*, 74 Ohio St. 3d 333, 658 N.E.2d 766 (1996)).

[116] *Id.* at 105 (citing cases).

[117] *Id.* at 106.

[118] *Id.* at 107-08 (citing *Pless*, 74 Ohio St. 3d 333, 658 N.E.2d 766).

[119] ECF # 8, Attachment at 128.

reviewing the record, the court determined that: (1) Strickland explicitly waived his right to a jury in a colloquy with the trial judge concerning the written waiver; (2) the signed, written waiver was made part of the record; (3) defense counsel attested to Strickland's signature on the waiver form; and (4) neither Strickland nor defense counsel objected at the commencement of the bench trial that Strickland had not signed the jury waiver form.[120] Consequently, the appeals court found that "the trial court complied with the requirements of R.C. 2945.06," and so overruled the assignment of error.[121]

As the State contends, Strickland presented this claim to the Ohio appeals court merely as an issue of state law, and did not implicate any federal constitutional issue for that court to address.[122] I recommend finding that Strickland's attempt here to expand his claim to include a federal constitutional claim is, as the State observes, "a misstatement of the issue that was before the state court."[123] Thus, this ground for relief be dismissed as non-cognizable.

Alternatively, this ground may also be denied on the grounds that the decision of the state court is not contrary to clearly established federal law. As the Sixth Circuit has stated, the clearly established federal law concerning waiver of the right to a jury trial "require[s] only that the waiver be consented to by the government and sanctioned by the court, and that

_____

[120] *Id.* at 129.

[121] *Id.*

[122] ECF # 8 at 16.

[123] *Id.*

it reflect the 'express and intelligent consent of the defendant.'"[124] Moreover, a waiver of rights form, such as was present here, has been held to be adequate to show a valid waiver,[125] and that state court findings regarding the validity of the waiver are accorded the presumption of correctness if the record otherwise supports that finding.[126]

Here, as discussed above, the state appeals court did find Strickland's waiver to be valid and that the record fully supported that conclusion. Indeed, as discussed earlier, Strickland's sole basis for his appellate claim was that his signature – which he never denied was his – was not expressly acknowledged by means of a specific inquiry on the record, and Ohio law mandated such acknowledgment be made by the particular language. The Ohio appeals court rejected that argument. The court further based its conclusion on the record showing that the trial court read the waiver in full to Strickland in open court, asked him "is that what you want to do," received Strickland's "yes" in response, and made the waiver signed by Strickland a part of the record.[127] As such, the finding of the state court must be accorded a presumption of correctness, as it is supported by the record.

---

[124] *Filiaggi*, 445 F.3d at 854-55 (quoting *Patton v. United States*, 281 U.S. 276, 312 (1930), abrogated on other grounds, *Williams v. Florida*, 399 U.S. 78 (1970).

[125] *Raley v. Parke*, 945 F.2d 137, 141-42 (6th Cir. 1991), *rev'd on other grounds*, *Parke v. Raley*, 506 U.S. 20 (1992).

[126] *Garcia v. Johnson*, 991 F.2d 324, 326-27 (6th Cir. 1993).

[127] ECF # 8, Attachment at 128-29.

In addition, as the United States Supreme Court recently held:

As amended by AEDPA, § 2254 stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility that fairminded jurists could disagree that the state court's decision conflicts with this Court's precedent. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice system," not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented to the federal court as so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.[128]

In this case, even if Strickland's appellate argument could be construed as having fairly presented a federal constitutional issue which then was left unaddressed by the decision of the Ohio court, I recommend finding, after considering the clearly established federal law discussed above, that the decision of the state appeals court was not contrary to that clearly established federal law and thus this ground for relief should, alternatively, be denied.

## Conclusion

For the foregoing reasons, I recommend that the petition of Christian Strickland for a writ of habeas corpus be dismissed in part and denied in part, or alternatively that the petition be denied in full.

Dated:  May 21, 2012                    s/ William H. Baughman, Jr.
                                        United States Magistrate Judge

---

[128] *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 786-87 (2011).

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[129]

---

[129] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).